Charles L. Fanning IV, Esq., State Bar No. 248704
THE FANNING LAW FIRM APC
501 W. Broadway, Suite 800
San Diego, California 92101
Telephone: (858) 400-4887
cfanning@fanning.law

Attorneys for Plaintiffs,
GREGORY CRISCI and
STEPHEN CONTI

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

GREGORY CRISCI, an individual, and
STEPHEN CONTI, an individual.

          Plaintiffs,

v.

NETSPEND CORPORATION, a Delaware
Corporation; SKYLIGHT FINANCIAL, INC.,
a Delaware Corporation; NETSPEND
HOLDINGS, INC., a Texas Corporation;
TOTAL SYSTEM SERVICES, INC., a
Georgia Corporation; and SKYLIGHT
ACQUISITION I, INC., a Delaware
Corporation,

          Defendants.

CASE NO. **'18 CV2628 BEN AGS**

**PLAINTIFFS' COMPLAINT FOR:**

1. **Breach of Contract**
2. **Fraud in the Inducement**
3. **Concealment**
4. **Promissory Fraud**
5. **Breach of the Implied Covenant of Good Faith and Fair Dealing**
6. **Negligent Misrepresentation to Induce Employment**
7. **Intentional Interference with Contractual Relations**
8. **Interference with Prospective Economic Advantage**
9. **Declaratory Relief**

**DEMAND FOR JURY TRIAL**

Plaintiffs GREGORY CRISCI ("CRISCI") and STEPHEN CONTI ("CONTI") (hereinafter CRISCI and CONTI are collectively referred to as "Plaintiffs") hereby allege as follows:

## THE PARTIES

1.     Plaintiff CRISCI is and at all relevant times has been a resident of San Diego, California.

2.      Plaintiff CONTI is and at all relevant times has been a resident of San Diego, California.

3.      Plaintiffs are informed, believes, and thereon allege that Defendant SKYLIGHT FINANCIAL, INC. (hereinafter "SKYLIGHT") was and is at all relevant times has been a company duly formed and existing under the laws of the State of Delaware with its principal place of business and headquarters, where the business' officers and/or managers direct, control, and coordinate the business' activities, in the State of Texas. SKYLIGHT is and was at all relevant times not a business entity formed under the laws of the state of California, nor does it have its principal place of business in the state of California.

4.      Plaintiffs are informed, believes, and thereon allege that Defendant NETSPEND HOLDINGS, INC. (hereinafter "NETSPEND") was and is at all relevant times has been a company duly formed and existing under the laws of the State of Texas with its principal place of business and headquarters, where the business' officers and/or managers direct, control, and coordinate the business' activities, in the State of Texas.  NETSPEND is and was at all relevant times not a business entity formed under the laws of the state of California, nor does it have its principal place of business in the state of California. Defendant SKYLIGHT is now, and at all times mentioned in this complaint was, the wholly owned subsidiary of NETSPEND.

5.      Plaintiffs are informed, believes, and thereon allege that Defendant TOTAL SYSTEM SERVICES, INC. (hereinafter "TSYS") was and is at all relevant times has been a company duly formed and existing under the laws of the State of Georgia with its principal place of business and headquarters, where the business' officers and/or managers direct, control, and coordinate the business' activities, in the State of Georgia.  TSYS is and was at all relevant times not a business entity formed under the laws of the state of California, nor does it have its principal place of business in the state of California. Defendant NETSPEND is now, and at all times mentioned in this complaint was, the wholly owned subsidiary of TSYS.

6. Plaintiffs are informed, believes, and thereon allege that Defendant NETSPEND CORPORATION (hereinafter "NETSPEND CORP.") was and is at all relevant times has been a company duly formed and existing under the laws of the State of Delaware with its principal place of business and headquarters, where the business' officers and/or managers direct, control, and coordinate the business' activities, in the State of Texas. NETSPEND CORP. is and was at all relevant times not a business entity formed under the laws of the state of California, nor does it have its principal place of business in the state of California. Defendant NETSPEND CORP. is now, and at all times mentioned in this complaint was, the wholly owned subsidiary of NETSPEND.

7. Plaintiffs are informed, believes, and thereon allege that Defendant SKYLIGHT ACQUISITION I, INC. (hereinafter "SKYLIGHT ACQUISITION") was and is at all relevant times has been a company duly formed and existing under the laws of the State of Delaware with its principal place of business and headquarters, where the business' officers and/or managers direct, control, and coordinate the business' activities, in the State of Texas. SKYLIGHT ACQUISITION is and was at all relevant times not a business entity formed under the laws of the state of California, nor does it have its principal place of business in the state of California. Defendant SKYLIGHT ACQUISITION is now, and at all times mentioned in this complaint was, the wholly owned subsidiary of NETSPEND. (SKYLIGHT, NETSPEND, TSYS, NETSPEND CORP., and SKYLIGHT ACQUISITION are referred to collectively as "Defendants" and individually as "Defendant".)

8. Each Defendant is liable for the acts of the other Defendants alleged in this complaint as its alter ego. Specifically, NETSPEND is the alter ego of SKYLIGHT, NETSPEND CORP., and SKYLIGHT ACQUISITIONS while TSYS is the alter ego of all Defendants based upon its conduct and ownership of the other Defendants. Recognition of the privilege of separate existence would promote injustice because NETSPEND and TSYS organized and controlled all Defendants so that they are now, and at all time mentioned in this complaint were, merely each an instrumentality, agency, conduit, or adjunct of NETSPEND and TSYS, and in bad faith dominated and controlled the Defendants.

**JURISDICTION & VENUE**

9.    Jurisdiction in this matter is based upon diversity between the parties pursuant to 28 U.S.C. Section 1332 as there is diversity of citizenship and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10.    This is an action for declaratory judgment pursuant to the Federal Declaratory Relief Act, 28 U.S.C. Section 2201, for purposes of determining an actual controversy between the parties.

11.    The above-captioned Court has proper jurisdiction and venue over the claims in this Complaint because Plaintiffs are residents of San Diego, California, the subject contract was entered into in San Diego, California, and Plaintiffs performed the vast majority of obligations under the contract in San Diego, California where the contract was delivered.

**THE BUSINESS OF TIP NETWORK**

12.    In 2012, Plaintiffs established startup company, Tip Network, Inc. ("Tip Network"). Tip Network was in the business of providing a technology solution and services to automate tip allocation and distribution to employees of restaurants, bars, hotels, casinos and other businesses. The Tip Network solution was a computer system which would track and aggregate tips paid by customers to staff members. Those tips would then be assigned and distributed to the appropriate employees, through a third-party payment provider, and either paid out via a prepaid payroll debit card or reports provided to the employer's payroll department for processing. Tip Network's services were attractive to service industry businesses, such as restaurants and bars, because it digitized the accounting of all tips paid to employees and eliminated the need for the business to use spreadsheets and carry large amounts of cash on hand to pay their staff their tips. The prepaid payroll debit cards, provided by third parties, also eliminated the safety risk of employees traveling with large amounts of cash.

13.    From June 2014 to September 2015, Tip Network sold and implemented its tip technology system in approximately 60 client locations with only 1 person implementing the

majority of the Tip Network systems, thus demonstrating the viability of the business based on the efficient use of the proper resources.

### THE PRE-ACQUISITION TIP NETWORK AND NETSPEND RELATIONSHIP

14.     NETSPEND is in the business of offering prepaid debit card products.   Simply put, their business model is to get as many of their card products into as many customers hands as possible and load as much money on their cards as possible.  NETSPEND is the alter ego and owner of the related defendants SKYLIGHT, NETSPEND CORP., and SKYLIGHT ACQUISITIONS while TSYS is the alter ego and owner of all of the Defendants.

15.     In 2012, NETSPEND and Plaintiffs discussed the potential business opportunities for Tip Network.  In November 2012, Tip Network and NETSPEND entered into a mutual non-disclosure agreement with the goal of exploring a potential business relationship.

16.     In early 2013, NETSPEND decided to further pursue Tip Network after they realized it was in their best interest to "buy" versus "build" this solution.  Thus, Tip Network and NETSPEND entered into a letter of intent with the goal of finding a joint client to pilot the Tip Network system with.

17.     In June 2014, Tip Network and NETSPEND began a pilot program for a current NETSPEND client.

18.     Plaintiffs are informed and believe and thereon allege that Defendants were involved in the assessment of Tip Network as an asset and its subsequent purchase.  From early 2014 through September of 2015 (when Defendants ultimately acquired Tip Network), Defendants made assurances to Plaintiffs that Defendants had the resources to support and grow Tip Network business, including but not limited to, Defendants' Implementation Department, Customer Service Team, Development Team, Product Team, Legal Team, Sales Team, Account Management Team, Compliance Department, and Business Development Team. These assurances were discussed in person and in multiple emails drafted by Patrick Brown and Dave Hill of Defendants.

19.     Based upon the repeated assurances and representations, Plaintiffs agreed to sell Tip Network and concurrently enter into employment agreements with Defendants. Plaintiffs were unaware that Defendants had misrepresented the resources they would dedicate to Tip Network, thus resulting in the implementation of minimal client locations post-acquisition compared to pre-acquisition by Plaintiffs.

**THE FRAUDULENT HIRING OF PLAINTIFFS TO ACQUIRE TIP NETWORK**

20.     As part of the transaction to purchase Tip Network, Defendants extended employment offer letters to Plaintiffs (collectively the "Agreement"), which by their terms apply to all successors.  The Agreement was drafted by Defendants and identified key terms of employment, including but not limited to Salary, the Benefits Program, and Commission Structure.  The Commission Structure was critical to Plaintiffs and their prime reason for selling Tip Network at the agreed upon price, while concurrently entering into the Agreement, as their roles would be to sell the Tip Network system to clients for Defendants to implement and support, and the majority of Plaintiffs' compensation would be earned through commissions throughout the 7-year agreed upon term.

21.     In negotiating the Agreement, on June 11, 2015, Plaintiffs provided in email, and then verbally discussed with Patrick Brown and Beth Deck of the Defendants a model forecasting various scenarios showing expected onboarded (implemented locations) and the resulting estimated tip loads that NETSPEND would fund on their cards. The more tip loads NETSPEND funded on their card products was directly tied to the revenue they earn and thus the commissions the Plaintiffs would receive.  This model was used to set expectations between the parties and the rationale for entering into the Agreement and the agreed upon price for the sale of Tip Network.  Of note, Plaintiffs have kept pace with the forecast of sales and tip loads in Year 1, Year 2 and would have hit Year 3's forecast had it not been for Defendants' refusal to provide commercially reasonable efforts to implement the sales Plaintiffs and others made.  However, the identified commissions have not been realized

because Defendants refused early on and continued to refuse to provide commercially reasonable efforts to implement the sales made.

22.    Based on the negotiations and structure of the Agreement, all parties knew that commissions were critical to Plaintiffs and those commissions were dependent on implementation and support by Defendants.  As such, Defendants agreed and represented they would provide commercially reasonable efforts and support for the Tip Network product.  Pursuant to the Agreement, Defendants represented:

> **Skylight is interested in the success of Tip Network and increasing Tip Loads**. In addition to Skylight's upfront investment set forth in the Asset Purchase Agreement, **Skylight intends to use commercially reasonable efforts to devote an appropriate level of support and commitment to the success of Tip Network and integration of Tip Network** into the Skylight business, all as determined by the leadership team of Skylight. (emphasis added).

23.    Ultimately, Plaintiffs came to learn Defendants were not interested in the success of Tip Network and increasing tips loads as Defendants refused to use commercially reasonable efforts to support Tip Network and make Tip Network a success.  Defendants further did not reasonably integrate Tip Network into the Skylight business (both operationally and technically), and they refused to disclose critical information prior to the hiring of Plaintiffs.

24.    From 2015 to the present, Plaintiffs have sold many client locations the Tip Network System on behalf of Defendants.  As of August 29, 2018, minimal client locations have had the Tip Network system implemented and in use because Defendants refuse to provide the implementation resources. Defendants' refusal to provide the necessary commercially reasonably support created a bottleneck wherein sales were drastically outpacing the minimal implementations.

25.    As discussed in greater detail below, the implementation bottleneck identified above has grown significantly since 2015 and is no surprise to Defendants.  Several times over the last few years, Plaintiffs advised Defendants of implementation issues and the pure

COMPLAINT

lack of implementation for almost all of the sales made.  Plaintiffs consistently notified leadership and the Senior Director of Implementation & Client Experience of all the upcoming implementations through weekly sync ups, leadership meetings and emails.

26.    Defendants have ignored Plaintiffs' requests and continue to refuse to apply the proper resources as they always intended to either force Plaintiffs to terminate their own employment or actually terminate Plaintiffs (which Defendants eventually did) in order to avoid paying any commissions when Defendants finally complete the contracts for those clients.

27.    In addition, Defendants refused to disclose and concealed from Plaintiffs several critical facts in order to mislead them into selling Tip Network and accepting terms of employment based on commissions Defendants had no intent to pay.  Prior to accepting employment, Dave Hill and Patrick Brown for Defendants advised Plaintiffs that Defendants had more than sufficient resources and "specific teams" that would timely implement the future clients. Unbeknownst to Plaintiffs when they accepted employment, Defendants' Implementations Department had staffing issues before the acquisition of Tip Network and thus could not convert or implement closed deals to revenue, similar to what the Tip Network product is experiencing today.

28.    Furthermore, Defendants did not disclose to Plaintiffs CFPB Regulatory issues and an impending FTC investigation, which led to an FTC lawsuit, all of which contributed to fewer resources available to implement and support Tip Network as required for Plaintiffs to be paid the commissions they earned from sales.

### DEFENDANTS' FRAUDULENT REFUSAL TO SUPPORT TIP NETWORK

29.    In October of 2015 after the acquisition of Tip Network, Plaintiffs stressed to Defendants that implementing a Tip Network client is the most critical part of making Tip Network a success. Defendants knew that revenue could not be fully realized until Tip Network was installed, implemented, rolled out live and employees received their tips funded on to their Netspend issued cards at a client's location.

30.     In addition, Defendants understood that the Tip Network Product was unlike Defendants' other Paycard products. To be successful, the Tip Network Product needed, at a minimum, Implementation Department resources who understood: the restaurant industry; the inner workings of a restaurant; how tips worked and were shared among employees; the ability to develop, write and communicate technical requirements related to restaurant tip policies; the ability to project manage; and the ability to communicate with C-Level and Director Level restaurant professionals.

31.     Defendants did not act in a commercially reasonable manner when addressing these reasonable support requirements, which resulted in a bottleneck where millions of dollars in pending Tip Network Product revenue got stuck in the Implementations Department's pipeline. Despite sales beginning in late 2015, Defendants refused to take commercially reasonable actions and utilize their Implementations Department resources for Tip Network clients.  Defendants waited until February of 2018 for the Implementations Department to engage with Tip Network clients, all with the support from Plaintiff CRISCI, which were outside of his core job responsibilities.

32.     In fact, Defendants refused to provide any customer service support to Tip Network clients until October 18, 2017, which was nearly twenty-five (25) months after the acquisition of Tip Network.  Until then, Plaintiffs were required to manage the majority of the support issues resulting in CRISCI and CONTI having to answer support tickets. Each support tickets could have ranged anywhere from a couple of minutes to several days to resolve due to the lack of development resources provided by Defendants.  Of note, Defendants' refusal to provide the necessary resources required Plaintiffs to provide services outside of their core job requirements and away from sales, their core job and manner of compensation, thus resulting in a breach of the Agreement by Defendants.

33.     Plaintiffs were advised by the Senior Director of Implementation & Client Experience, that beginning in February of 2018, two dedicated Implementations Department resources were to be 100% allocated to the Tip Network Product.  However, consistent with Defendants' deceptive practices, in August of 2018 Plaintiffs learned directly from the new

VP of CPP Operations and Channel Management, Robert Hunt, that these "dedicated" resources were, "at best 50% dedicated" to implement Tip Network clients.

34.   Moreover, during this critical time for Tip Network, Defendants misallocated the minimal resources dedicated to the Tip Network product.   Specifically, Defendants required Plaintiff CONTI dedicate significant time and resources to catering to one of Defendants' other partners.   CONTI was required to train the sales team, market the product, demonstrate the product, and sell for the benefit of Defendants' other partner rather than focusing his efforts on clients that were within the Tip Network "target market" to the detriment of his ability to support the Tip Network product and earn commissions.

35.   As a result of Defendants' refusal to provide commercially reasonable support, the Tip Network system lost clients or potential clients Plaintiffs would have been able to sign, which negatively impacted Plaintiffs' commissions.

36.   In negotiating the Agreement, Plaintiffs provided to Patrick Brown and Beth Deck of the Defendants a model forecasting various tip load scenarios for Tip Network.   Of note, Plaintiffs have kept pace with the forecast of sales and tip loads in Year 1, Year 2 and would have hit Year 3's forecast had it not been for Defendants' refusal to provide commercially reasonable efforts to implement the sales Plaintiffs and others made. However, the identified commissions have not been realized because Defendants refuse to provide commercially reasonable efforts to implement the sales Plaintiffs have made.   Had commercially reasonable efforts to implement been utilized by Defendants, Plaintiffs would have realized millions of dollars in commissions.   Based on the continued refusal to implement the Tip Network product for clients, Defendants will ultimately cost Plaintiffs all of their commissions.   Moreover, Plaintiffs' professional reputations and emotional stability have been stripped away by Defendants' deceptive practices.

## **DEFENDANTS' FRAUDULENT FIRING OF PLAINTIFFS**

37.   Defendants repeatedly ignored Plaintiffs' requests for support and refused to apply the commercially reasonable resources as they always intended to either force

1    Plaintiffs to terminate their own employment or actually terminate Plaintiffs in order to avoid
2    paying any commissions when Defendants finally complete the contracts for those clients via
3    implementation.

4    38.    During the course of the business relationship, Plaintiffs, on the other hand,
5    repeatedly attempted to make Tip Network a success and assist Defendants with this goal.
6    On or about June 27, 2018, in response to Defendants' request acknowledging the
7    implementation bottleneck, Plaintiffs provided Defendants with options to revise the
8    Agreement to reflect the reality of the situation.  On August 13, 2018, Defendants flat out
9    denied Plaintiffs' offer.

10    39.    On or about August 29, 2018, Plaintiffs provided Defendants with notice they
11    were in breach of the Agreement and had 30 days to cure per the terms of the Agreement.
12    Defendants did not cure the identified breaches.

13    40.    On November 8, 2018, Defendants followed through with their scheme to
14    defraud Plaintiffs and deprive them entirely of their commissions. Defendants terminated
15    Plaintiffs' employment based on specious claims in order to somehow retroactively justify
16    their own significant breaches of the Agreement.  Ultimately, Plaintiffs sold millions of
17    dollars of Tip Network systems for Defendants and will realize none of their commissions
18    due solely to the intentional implementation bottleneck created by Defendants (who will
19    completely profit from Plaintiffs' sales once the system is successfully implemented after
20    Plaintiffs' improper termination).

21

22                              **FIRST CAUSE OF ACTION**
23                              **Breach of Written Contract**
24              **(Against All Defendants, including DOES 1 through 100)**

25    41.    Plaintiffs repeat, re-allege and incorporate by this reference each and all of the
26    allegations contained in this Complaint.

27    42.    Plaintiffs and SKYLIGHT entered into the Agreement for employment and
28    payment of commissions earned by Plaintiffs.  The Agreement provided it was binding on all

1   successor entities.  Plaintiffs are informed and believe and thereon allege the Agreement is

2   thus binding on all Defendants as successors.

3        43.    Based on the negotiations and structure of the Agreement, all parties knew that

4   commissions were critical to Plaintiffs and those commissions were dependent on

5   implementation and support by Defendants.  As such, Defendants agreed and represented

6   they would provide commercially reasonable efforts and support for the Tip Network

7   product.  Pursuant to the terms and conditions of the Agreement, Defendants represented and

8   agreed:

9             **Skylight is interested in the success of Tip Network and**
              **increasing Tip Loads**. In addition to Skylight's upfront
10            investment set forth in the Asset Purchase Agreement, **Skylight**
              **intends to use commercially reasonable efforts to devote an**
11            **appropriate level of support and commitment to the success**
              **of Tip Network and integration of Tip Network** into the
12            Skylight business, all as determined by the leadership team of
              Skylight. (emphasis added).
13

14

15       44.    Plaintiffs are informed and believe and thereon allege commission would have

16   been paid to Plaintiffs but for the improper conduct of Defendants.  Plaintiffs have

17   performed all conditions, covenants and promises required to be performed in accordance

18   with the terms and conditions of the Agreement, except to the extent that Plaintiffs were

19   prevented by Defendants, or excused from such performance, or said conditions, covenants

20   and promises have accrued or have been waived.

21       45.    Defendants have breached one or more provisions of the Agreement by:

22       a.  Refusing to use commercially reasonable efforts to support Tip Network and

23           make Tip Network a success;

24       b.  Refusing to provide any interest in the success of Tip Network and increasing

25           tip loads;

26       c.  Intentionally misallocating the limited resources available to Tip Network;

27       d.  Refusing to reasonably integrate Tip Network into the Skylight business (both

28           operationally and technically); and

e.   Refusing to disclose and concealing critical information when entering into the Agreement, including but not limited to implementation and staffing issues, CFPB Regulatory issues, and an impending FTC investigation, which led to an FTC lawsuit, all of which contributed to fewer resources available to implement and support Tip Network as required for Plaintiffs to be paid the commissions they earned from sales.

46.   As a direct and proximate result of Defendants' breaches of the Agreement and their duties owed to Plaintiffs, Plaintiffs have suffered damages in an amount in excess of the minimal jurisdictional requirements of this Court, in an amount to be determined at time of trial, in that Plaintiffs have been and will hereafter be unable to collect any of the commissions properly earned and owed, the loss of future commissions, the loss of income, loss of business reputation, emotional distress, expert investigative costs, attorneys' fees, prejudgment interest, and all awardable costs pursuant to law.

## SECOND CAUSE OF ACTION

### For Fraud in the Inducement

### (Against All Defendants)

47.   Plaintiffs repeat, re-allege and incorporate by this reference each and all of the allegations contained in this Complaint

48.   Plaintiffs are informed and believe and thereon allege that Defendants through management, including but not limited to Patrick Brown and Dave Hill, knew about and were aware of critical information relating to Plaintiffs and their decision to enter into the Agreement, which Defendants were obligated to report or disclose to Plaintiffs, but failed to do so and concealed from Plaintiffs.  Specifically, Defendants knew of implementation and staffing issues, CFPB Regulatory issues, and an impending FTC investigation, which led to an FTC lawsuit, all of which contributed to fewer resources available to implement and support Tip Network as required for Plaintiffs to be paid the commissions they earned from sales.

49.     Plaintiffs are informed and believe and thereon allege that Defendants intentionally and knowingly represented they had sufficient implementation resources and would dedicate those resources to implement the Tip Network product in order to induce Plaintiffs enter into the Agreement and sell Tip Network.  The true conditions were unknown and hidden from Plaintiffs at time of entering into the Agreement, who could not discover said facts or were prevented from doing so by Defendants. Defendants' representations were false and Defendants knew they were false when made or they were made recklessly and without regard for their truth.

50.     Plaintiffs are informed and believe and thereon allege that Defendants intended for Plaintiffs to rely on Defendants' representations in order to purchase Tip Network and for Plaintiffs to accept employment and make sales for Defendants pursuant to the terms of the Agreement.  Plaintiffs reasonably relied upon Defendants' representations as Defendants had first-hand knowledge of the condition of their business.

51.     Defendants' intentional and knowing misrepresentations as to the condition of their business (instead of disclosing the deficiencies, lack of support, and legal issues) were substantial factors in causing damages to Plaintiffs that they would not have incurred but for Defendants' fraudulent and deceptive conduct.  As a direct and proximate result of the misrepresentations, Plaintiffs have suffered damages in an amount in excess of the minimal jurisdictional requirements of this Court, in an amount to be determined at time of trial, in that Plaintiffs have been and will hereafter be unable to collect any of the commissions properly earned and owed, the loss of future commissions, the loss of income, loss of business reputation, emotional distress, expert investigative costs, attorneys' fees, prejudgment interest, and all awardable costs pursuant to law.

52.     Such conduct enumerated above was malicious, unreasonable, oppressive, fraudulent, and despicable, had improper motives, including a desire by Defendants to cause injury, vex, annoy, and oppress Plaintiffs, and were carried out with a willful and conscious disregard of Plaintiffs' rights and economic safety.  The above-described conduct further stemmed from improper and evil motives, including Defendants' desire to maximize profits

at the expense of Plaintiffs' so as to justify an award of punitive and exemplary damages. Defendants and each of their respective officers, directors and managing agents participated in, authorized and ratified the fraudulent conduct as alleged above.

## THIRD CAUSE OF ACTION

### For Concealment

### (Against All Defendants)

53.     Plaintiffs repeat, re-allege and incorporate by this reference each and all of the allegations contained in this Complaint.

54.     Plaintiffs are informed and believe and thereon allege that Defendants through management, including but not limited to Patrick Brown and Dave Hill, knew about and were aware of critical information relating to Plaintiffs and their decision to enter into the Agreement, which Defendants were obligated to report or disclose to Plaintiffs, but failed to do so and concealed from Plaintiffs.  Specifically, Defendants knew of implementation and staffing issues, CFPB Regulatory issues, and an impending FTC investigation, which led to an FTC lawsuit, all of which contributed to fewer resources available to implement and support Tip Network as required for Plaintiffs to be paid the commissions they earned from sales.

55.     Plaintiffs are informed and believe and thereon allege that Defendants intentionally and knowingly concealed and failed to disclose the true condition of their business and legal issues in order to induce Plaintiffs to enter into the Agreement and sell Tip Network.  The true conditions were unknown and hidden from Plaintiffs at time of entering into the Agreement, who could not discover said facts or were prevented from doing so by Defendants. Defendants' representations were false and Defendants knew they were false when made or they were made recklessly and without regard for their truth.

56.     Plaintiffs are informed and believe and thereon allege that Defendants intended for Plaintiffs to rely on Defendants' representations in order to purchase Tip Network and for Plaintiffs to accept employment and make sales for Defendants pursuant to the terms of the

Agreement.  Plaintiffs reasonably relied upon Defendants' representations as Defendants had first-hand knowledge of the condition of their business.

57.    Defendants' concealment of the condition of their business (instead of disclosing the deficiencies, lack of support, and legal issues) were substantial factors in causing damages to Plaintiffs that they would not have incurred but for Defendants' fraudulent conduct.  As a direct and proximate result of the misrepresentations, Plaintiffs have suffered damages in an amount in excess of the minimal jurisdictional requirements of this Court, in an amount to be determined at time of trial, in that Plaintiffs have been and will hereafter be unable to collect any of the commissions properly earned and owed, the loss of future commissions, the loss of income, loss of business reputation, emotional distress, expert investigative costs, attorneys' fees, prejudgment interest, and all awardable costs pursuant to law.

58.    Such conduct enumerated above was malicious, unreasonable, oppressive, fraudulent, deceptive, and despicable, had improper motives, including a desire by Defendants to cause injury, vex, annoy, and oppress Plaintiffs, and were carried out with a willful and conscious disregard of Plaintiffs' rights and economic safety.  The above-described conduct further stemmed from improper and evil motives, including Defendants' desire to maximize profits at the expense of Plaintiffs' so as to justify an award of punitive and exemplary damages.  Defendants and each of their respective officers, directors and managing agents participated in, authorized and ratified the fraudulent conduct as alleged above.

### FOURTH CAUSE OF ACTION

**For Promissory Fraud**

**(Against All Defendants)**

59.    Plaintiffs repeat, re-allege and incorporate by this reference each and all of the allegations contained in this Complaint.

60.    Plaintiffs are informed and believe and thereon allege that Defendants through

management, including but not limited to Patrick Brown and Dave Hill, knew about and were aware of critical information relating to Plaintiffs and their decision to enter into the Agreement, which Defendants were obligated to report or disclose to Plaintiffs, but failed to do so and concealed from Plaintiffs.  Specifically, Defendants knew of implementation and staffing issues, CFPB Regulatory issues, and an impending FTC investigation, which led to an FTC lawsuit, all of which contributed to fewer resources available to implement and support Tip Network as required for Plaintiffs to be paid the commissions they earned from sales.

61.    Plaintiffs are informed and believe and thereon allege that, after execution of the Agreement, Defendants intentionally and knowingly continued to represent it had sufficient implementation resources and would dedicate those resources to implement the Tip Network product as evidence by several assurances by Defendants, including but not limited to the Senior Director of Implementation & Client Experience, that beginning in February of 2018, two dedicated Implementations Department resources were to be 100% allocated to the Tip Network Product.  The true conditions were unknown and continued to be hidden from Plaintiffs. Defendants' representations were false and Defendants knew they were false when made or they were made recklessly and without regard for their truth.

62.    Plaintiffs are informed and believe and thereon allege that Defendants intended for Plaintiffs to rely on Defendants' representations in order for Plaintiffs to continue to make sales for Defendants pursuant to the terms of the Agreement.  Plaintiffs reasonably relied upon Defendants' representations as Defendants had first-hand knowledge of the condition of their business.

63.    Defendants' continued intentional and knowing misrepresentations as to the condition of their business (instead of disclosing the deficiencies, lack of support, and legal issues) were substantial factors in causing damages to Plaintiffs that they would not have incurred but for Defendants' fraudulent conduct.  As a direct and proximate result of the misrepresentations, Plaintiffs have suffered damages in an amount in excess of the minimal jurisdictional requirements of this Court, in an amount to be determined at time of trial, in

that Plaintiffs have been and will hereafter be unable to collect any of the commissions properly earned and owed, the loss of future commissions, the loss of income, loss of business reputation, emotional distress, expert investigative costs, attorneys' fees, prejudgment interest, and all awardable costs pursuant to law.

64.     Such conduct enumerated above was malicious, unreasonable, oppressive, fraudulent, and despicable, had improper motives, including a desire by Defendants to cause injury, vex, annoy, and oppress Plaintiffs, and were carried out with a willful and conscious disregard of Plaintiffs' rights and economic safety.  The above-described conduct further stemmed from improper and evil motives, including Defendants' desire to maximize profits at the expense of Plaintiffs' so as to justify an award of punitive and exemplary damages. Defendants and each of their respective officers, directors and managing agents participated in, authorized and ratified the fraudulent conduct as alleged above.

## **FIFTH CAUSE OF ACTION**

### **For Breach of the Implied Covenant of Good Faith and Fair Dealing**

### **(Against All Defendants)**

65.     Plaintiffs repeat, re-allege and incorporate by this reference each and all of the allegations contained in this Complaint.

66.     At all material times Defendants had the duty to act fairly and in good faith toward Plaintiffs in carrying out their responsibilities under the Agreement.

67.     Inherent in the Agreement with Plaintiffs was an implied covenant of good faith and fair dealing, which imposed upon Defendants the duty to deal fairly and honestly with Plaintiffs in good faith and to do nothing to the detriment of Plaintiffs, or to impair, interfere with, hinder or potentially deprive Plaintiffs of their rights and benefits under the Agreement.

68.     Pursuant to the Agreement, Defendants had an implicit obligation to act fairly and in good faith to Plaintiffs to provide "commercially reasonable support."  The Agreement identified herein is subject to the implied covenant of good faith and fair dealing

such that no party will disturb the rights of the other to obtain the full benefits of the contract, including but not limited to collection of commissions earned by sales.

69.     Plaintiffs are informed, believe, and thereon allege, that Defendants breached their obligations to act fairly and in good faith towards Plaintiffs under the Agreement by committing, among other things, the following acts and omissions:

      a.  Unreasonably refusing to use commercially reasonable efforts to support Tip Network and make Tip Network a success;

      b.  Unreasonably refusing to provide any interest in the success of Tip Network and increasing tip loads;

      c.  Unreasonably and intentionally misallocating the limited resources available to Tip Network;

      d.  Unreasonably refusing to integrate Tip Network into the Skylight business (both operationally and technically);

      e.  Unreasonably refusing to disclose and concealing critical information when entering into the Agreement, including but not limited to implementation and staffing issues, CFPB Regulatory issues, and an impending FTC investigation, which led to an FTC lawsuit, all of which contributed to fewer resources available to implement and support Tip Network as required for Plaintiffs to be paid the commissions they earned from sales;

      f.  Unreasonably refusing to properly respond to Plaintiffs' requests, as well as to properly respond to other communications; and

      g.  Ultimately terminating Plaintiffs' employment for specious reasons (only after Plaintiffs identified Defendants' breaches of the Agreement) in order to deprive Plaintiffs of any commissions, which Defendants could not collect for their own profit.

70.     The above despicable conduct by Defendants has been and continues to be unreasonable, capricious, arbitrary, and constitutes a breach of the covenant of good faith and fair dealing.

71.   Such conduct enumerated above was malicious, unreasonable, oppressive, fraudulent, and despicable, had improper motives, including a desire by Defendants to cause injury, vex, annoy, and oppress Plaintiffs, and were carried out by Defendants with a willful and conscious disregard of Plaintiffs' rights and economic safety.

72.   The respective officers, directors and managing agents Defendants participated in, authorized and ratified the wrongful conduct of Defendants as alleged above.

73.   As a direct and proximate result of the bad faith conduct of Defendants, Plaintiffs have suffered damages in an amount in excess of the minimal jurisdictional requirements of this Court, in an amount to be determined at time of trial, in that Plaintiffs have been and will hereafter be unable to collect any of the commissions properly earned and owed, the loss of future commissions, the loss of income, loss of business reputation, emotional distress, expert investigative costs, attorneys' fees, prejudgment interest, and all awardable costs pursuant to law.

74.   The above described conduct of Defendants has been and continues to be unreasonable, capricious and arbitrary, and constitutes a breach of the implied covenant of good faith and fair dealing contained in the Agreement.   The above-described conduct further constitutes malicious, oppressive and despicable conduct and conscious disregard of Plaintiffs' rights, and stems from improper and evil motives, including Defendants' desire to reduce or avoid its obligations in order to increase its profits at the expense of Plaintiffs, so as to justify an award of punitive and exemplary damages.

## **SIXTH CAUSE OF ACTION**

### **Negligent Misrepresentation to Induce Employment**

### **(Against All Defendants)**

75.   Plaintiffs repeat, re-allege and incorporate by this reference each and all of the allegations contained in this Complaint.

76.   Plaintiffs are informed and believe and thereon allege that Defendants through management, including but not limited to Patrick Brown and Dave Hill, knew about, were

aware of, or should have known critical information relating to Plaintiffs and their decision to enter into the Agreement, which Defendants were obligated to report or disclose to Plaintiffs, but failed to do so.  Specifically, Defendants knew of or should have known of implementation and staffing issues, CFPB Regulatory issues, and an impending FTC investigation, which led to an FTC lawsuit, all of which contributed to fewer resources available to implement and support Tip Network as required for Plaintiffs to be paid the commissions they earned from sales.

77.     Plaintiffs are informed and believe and thereon allege that Defendants represented they had sufficient implementation resources and would dedicate those resources to implement the Tip Network product in order to induce Plaintiffs enter into the Agreement and sell Tip Network.  The true conditions were unknown and hidden from Plaintiffs at time of entering into the Agreement, who could not discover said facts or were prevented from doing so by Defendants. These representations were false and although Defendants may have honestly believed that these representations were true, they had no reasonable grounds for doing so based upon their first-hand knowledge of their own business.

78.     Plaintiffs are informed and believe and thereon allege that Defendants intended for Plaintiffs to rely on Defendants' representations in order to purchase Tip Network and for Plaintiffs to accept employment and make sales for Defendants pursuant to the terms of the Agreement.  Plaintiffs reasonably relied upon Defendants' representations as Defendants had first-hand knowledge of the condition of their business.

79.     Defendants' misrepresentations as to the condition of their business (instead of disclosing the deficiencies, lack of support, and legal issues) were substantial factors in causing damages to Plaintiffs that they would not have incurred but for Defendants' fraudulent conduct.  As a direct and proximate result of the misrepresentations, Plaintiffs have suffered damages in an amount in excess of the minimal jurisdictional requirements of this Court, in an amount to be determined at time of trial, in that Plaintiffs have been and will hereafter be unable to collect any of the commissions properly earned and owed, the loss of future commissions, the loss of income, loss of business reputation, emotional distress,

expert investigative costs, attorneys' fees, prejudgment interest, and all awardable costs pursuant to law.

**SEVENTH CAUSE OF ACTION**

**Intentional Interference with Contractual Relations**

**(Against All Defendants)**

80.     Plaintiffs repeat, re-allege and incorporate by this reference each and all of the allegations contained in this Complaint.

81.     Plaintiffs are informed and believe and thereon allege that Defendants were all aware of the Agreement entered into between the parties, either through direct execution, ratification, successor liability, or personal knowledge.

82.     Despite knowledge of the Agreement and the attendant duties, obligations, terms, and conditions, each of the Defendants' conduct prevented performance and materially affected Plaintiffs' ability to collect its benefit of the bargain.

83.     Plaintiffs are informed and believe and thereon allege that Defendants intended to disrupt the performance of this contract or knew that disruption of performance was certain or substantially certain to occur based on their conduct, including but not limited to:

   a. Preventing the use of commercially reasonable efforts to support Tip Network and make Tip Network a success;

   b. Preventing the realization and support for the interest in the success of Tip Network and increasing tip loads;

   c. Preventing proper allocation of the limited resources available to Tip Network;

   d. Preventing the integration of Tip Network into the Skylight business (both operationally and technically); and

   e. Preventing or otherwise concealing critical information relating to the Agreement, including but not limited to implementation and staffing issues, CFPB Regulatory issues, and an impending FTC investigation, which led to an FTC lawsuit, all of which contributed to fewer resources available to

1  implement and support Tip Network as required for Plaintiffs to be paid the
2  commissions they earned from sales.

3  84.   Defendants' conduct were substantial factors in causing damages to Plaintiffs
4  that they would not have incurred but for Defendants' said conduct.   As a direct and
5  proximate result of the conduct, Plaintiffs have suffered damages in an amount in excess of
6  the minimal jurisdictional requirements of this Court, in an amount to be determined at time
7  of trial, in that Plaintiffs have been and will hereafter be unable to collect any of the
8  commissions properly earned and owed, the loss of future commissions, the loss of income,
9  loss of business reputation, emotional distress, expert investigative costs, attorneys' fees,
10 prejudgment interest, and all awardable costs pursuant to law.

11

12  **EIGHTH CAUSE OF ACTION**

13  **Interference with Prospective Economic Advantage**

14  **(Against All Defendants)**

15  85.   Plaintiffs repeat, re-allege and incorporate by this reference each and all of the
16  allegations contained in this Complaint.

17  86.   Plaintiffs are informed and believe and thereon allege that Defendants were all
18  aware, either through direct execution, ratification, successor liability, or personal
19  knowledge, that Plaintiffs were attempting to sell the Tip Network product to potential
20  clients creating an economic relationship that probably would have resulted in an economic
21  benefit to Plaintiffs.

22  87.   Defendants engaged in wrongful conduct resulting in the loss of those clients
23  many of which had agreed to the sale and only backed out after Defendants:

24  a.   Unreasonably refused or prevented commercially reasonable efforts to support
25       Tip Network and make Tip Network a success, including but not limited to
26       implementation, customer service, and representative knowledgeable as to the
27       restaurant and tipping industry; and

28

b.   Unreasonably and intentionally misallocated the limited resources available to Tip Network.

88.     Plaintiffs are informed and believe and thereon allege that by engaging in this conduct, Defendants intended to disrupt the relationships or knew that disruption of the relationships was certain or substantially certain to occur.  Many Tip Network accounts and economic relationships were disrupted and destroyed after being sold the product by Plaintiffs because of Defendants' lack of commercially reasonable support for implementation or address client requests for required functionality and/or operational.

89.     Defendants' conduct were substantial factors in causing damages to Plaintiffs that they would not have incurred but for Defendants' said conduct.  As a direct and proximate result of the conduct, Plaintiffs have suffered damages in an amount in excess of the minimal jurisdictional requirements of this Court, in an amount to be determined at time of trial, in that Plaintiffs have been and will hereafter be unable to collect any of the commissions properly earned and owed, the loss of future commissions, the loss of income, loss of business reputation, emotional distress, expert investigative costs, attorneys' fees, prejudgment interest, and all awardable costs pursuant to law.

## NINTH CAUSE OF ACTION

### Declaratory Relief

### (Against All Defendants)

90.     Plaintiffs repeat, re-allege and incorporate by this reference each and all of the allegations contained in this Complaint.

91.     As set forth above, Defendants among other things, agreed to use commercially reasonable efforts to support Tip Network and make Tip Network a success; support the success of Tip Network and increasing tip loads; integrate Tip Network into the Skylight business (both operationally and technically); and disclose all critical information relating to the Agreement to Plaintiffs.

92.     Plaintiffs have  performed each covenant and/or condition which on their part must be performed in order to obtain benefits of the Agreement, or has been excused from so performing as a result of Defendants' breach of the Agreement described in greater detail above.

93.     A dispute has arisen between Plaintiff and Defendants in that Plaintiff contends, pursuant to the Agreement, Defendants have not: used commercially reasonable efforts to support Tip Network and make Tip Network a success; support the success of Tip Network and increasing tip loads; integrate Tip Network into the Skylight business (both operationally and technically); and disclosed all critical information relating to the Agreement to Plaintiffs.  Plaintiffs are informed and believe and thereon allege that Defendants unreasonably contends otherwise.

94.     An actual controversy exists between Plaintiffs and Defendants regarding the parties' obligations under the Agreement.  A declaratory judgment is necessary and appropriate to determine the rights and duties of the parties under the Agreement.

**WHEREFORE**, Plaintiffs pray for judgment against each and all of the Defendants as follows:

## ON THE FIRST CAUSE OF ACTION

1.     For compensatory damages in an amount to be determined according to proof, but in an amount within the jurisdiction of this Court, plus interest as provided by law;

## ON THE SECOND CAUSE OF ACTION

2.     For compensatory damages in an amount to be determined according to proof, but in an amount within the jurisdiction of this Court, plus interest as provided by law;

3.     For punitive damages according to proof;

4.     For reasonable attorneys' fees and costs;

## ON THE THIRD CAUSE OF ACTION

5.     For compensatory damages in an amount to be determined according to proof, but in an amount within the jurisdiction of this Court, plus interest as provided by law;

1    6.    For punitive damages according to proof;

2    7.    For reasonable attorneys' fees and costs;

3                    **ON THE FOURTH CAUSE OF ACTION**

4    8.    For compensatory damages in an amount to be determined according to proof,

5    but in an amount within the jurisdiction of this Court, plus interest as provided by law;

6    9.    For punitive damages according to proof;

7    10.   For reasonable attorneys' fees and costs;

8                    **ON THE FIFTH CAUSE OF ACTION**

9    11.   For compensatory damages in an amount to be determined according to proof,

10   but in an amount within the jurisdiction of this Court, plus interest as provided by law;

11   12.   For punitive damages according to proof;

12   13.   For reasonable attorneys' fees and costs;

13                   **ON THE SIXTH CAUSE OF ACTION**

14   14.   For compensatory damages in an amount to be determined according to proof,

15   but in an amount within the jurisdiction of this Court, plus interest as provided by law;

16                   **ON THE SEVENTH CAUSE OF ACTION**

17   15.   For compensatory damages in an amount to be determined according to proof,

18   but in an amount within the jurisdiction of this Court, plus interest as provided by law;

19   16.   For punitive damages according to proof;

20   17.   For reasonable attorneys' fees and costs;

21                   **ON THE EIGHTH CAUSE OF ACTION**

22   18.   For compensatory damages in an amount to be determined according to proof,

23   but in an amount within the jurisdiction of this Court, plus interest as provided by law;

24   19.   For punitive damages according to proof;

25   20.   For reasonable attorneys' fees and costs;

26                   **ON THE NINTH CAUSE OF ACTION**

27   21.   For declaratory judgment that, pursuant to the Agreement, Defendants had the

28   obligations and did not: use commercially reasonable efforts to support Tip Network and

make Tip Network a success; support the success of Tip Network and increasing tip loads; integrate Tip Network into the Skylight business (both operationally and technically); and disclose all critical information relating to the Agreement to Plaintiffs.

## ON ALL CAUSES OF ACTION

22.   For general and special damages shown according to proof at time of trial;

23.   For costs of suit herein incurred;

24.   For pre- and post-judgment interest to the extent provided by law; and,

25.   For all such other and further relief as the Court may deem just and proper.

DATED: November 16, 2018                    THE FANNING LAW FIRM, APC


By:   *Charles L. Fanning IV*
      Charles L. Fanning IV, Esq.
      Attorneys for Plaintiffs,
      GREGORY CRISCI and STEPHEN CONTI

## **DEMAND FOR JURY TRIAL**

Pursuant to Civil L.R. 3-6 and Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a jury trial.

DATED: November 16, 2018                    THE FANNING LAW FIRM, APC


By: *Charles L. Fanning IV*
      Charles L. Fanning IV, Esq.
      Attorneys for Plaintiff,
      GREGORY CRISCI and STEPHEN CONTI